GOESCHEL v. FISHER.

1. WITNESSES—LEADING QUESTIONS.
   A question whether an officer was instructed to go to a given place for a specified purpose, and whether he did go, is properly excluded as leading.

2. TRIAL—INSTRUCTIONS—TITLE TO PERSONAL PROPERTY.
   Where, in replevin by a wife against an attaching creditor of her husband, the testimony is conflicting as to whether the money with which the property was purchased belonged to her, and, if so, whether it was advanced to the husband as a loan or with the understanding that the property was to be purchased for the wife, it is error to refuse instructions embracing the several theories, and to leave to the jury, in a general way, the mere question of the *bona fides* of the transaction.

Error to St. Clair; Vance, J. Submitted December 5, 1895. Decided January 16, 1896.

Replevin by Amelia Goeschel against James Fisher, deputy sheriff, and Jacob Bernatz, sheriff, of St. Clair county. From a judgment for plaintiff, defendants bring error. Reversed.

*Chadwick & McIlwain,* for appellants.

*Phillips & Jenks,* for appellee.

HOOKER, J. The plaintiff brought replevin against a sheriff and his deputy, who held certain hay upon an attachment issued in an action brought against her husband, Herman Goeschel. It appears that Herman Goeschel was engaged in the purchasing and shipment of hay under the name of Goeschel Bros. He had bought some hay from Harvey Lashbrook, the plaintiff in the attachment proceedings, which attachment was issued by the circuit court on February 14, 1893, and levied upon the hay in question on February 18, 1893. The hay had been bought from James Shanahan, and the following is a memorandum of that transaction delivered to Shanahan at the time:

"SMITH CREEK, Feb. 14, 1893.
"Bought of James Shanahan 32 tons, at $12 a ton. Every car to be paid in full before it leaves. The last is to be as good as first load.
[Signed]      "H. GOESCHEL."

Upon the trial, the plaintiff testified that she was in possession of about $400, which her father had given her some months before; and, upon the occasion of the purchase of this hay, she had allowed it to be used in payment by her husband, under circumstances which her counsel contend show a purchase of the hay by her. She testified several times that she lent it to her husband, and, at several other points of her testimony, it would appear that he acted as agent for her in the purchase of the hay. Shanahan testified that he received his pay as the hay was delivered, and from the plaintiff, and three receipts given by him to her were offered in evidence. These receipts were dated February 16th, 17th, and 18th. It is admitted

that Herman Goeschel shipped the hay in the name of Goeschel Bros., and received and collected the pay therefor, which it is claimed he accounted for to his wife.

The eighth assignment of error applies to questions asked witness Lashbrook by defendants' counsel on redirect examination, viz., "whether the officer was instructed to go to Smith Creek, and be on the lookout for hay that Goeschel Bros. were purchasing, and levy on it," and "whether the officer was at Smith Creek for several days before an attachment was finally levied." These questions were objected to as leading, immaterial, and incompetent, and the objections sustained. The claim of the defendants was that, in a dispute with Herman Goeschel, Lashbrook had threatened an attachment, and that Herman Goeschel knew the sheriff, and that, if he saw him at Smith Creek, it would explain the motive in having the money paid by his wife, and receipts drawn to her. If this testimony was admissible, it could easily have been called for by a question that was not leading. That objection was made, and counsel seems not to have cared enough about the point to change his question. As the questions were leading, we cannot say that error was committed in excluding them.

The ninth assignment alleges error in refusing to give defendants' third request to charge. It was as follows:

"If you believe from the evidence in this case that the plaintiff did loan money to her husband with which to purchase the hay in controversy, and it was purely a loan to him, and was not understood between the parties that the hay was to be hers, then she cannot recover."

If it was true that the money used to pay for the hay belonged to the plaintiff, and that she loaned it to the husband, without an understanding that the hay was purchased for her, it is difficult to see how she could maintain her replevin. There was considerable evidence tending to contradict her claim of ownership, and we think this question should have been left to the jury. The court did, in a general way, leave the question of the *bona fides*

of the transaction to the jury; but they might have found her to be the owner of the money, and yet that she loaned it, without arranging to take title herself. This is a case where the statements of the plaintiff and her husband could only be contradicted by circumstances, and we think the view of the case presented by the third request should have been placed before the jury. We do not mean to imply that plaintiff's testimony that she loaned the money is conclusive, but her entire testimony, as a whole, should be considered in determining that question. If the jury should have thought this a slip of the tongue, voicing the truth, they could have consistently found that she was not the owner of the hay. On the other hand, if she was not versed in the English language, that was a circumstance to be considered against defendants' theory.

The judgment is reversed, and a new trial ordered.

LONG and GRANT, JJ., concurred. McGRATH, C. J., and MONTGOMERY, J., did not sit.